UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD STANLEY, JR., <br> TIM CLARK, <br><br> Plaintiffs, <br><br> v. <br><br> BROWN COUNTY ELECTION BOARD, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:25-cv-01482-TWP-MKK <br> ) <br> ) <br> ) <br> ) |

**ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION**

This matter is before the Court on a Motion to Dismiss the Amended Complaint (Filing No. 27) filed by Defendant Brown County Election Board (the "Election Board"), as well as a Motion for Summary Judgment (Filing No. 25) and a Motion for Preliminary Injunction (Filing No. 29) filed by Plaintiffs Richard Stanley, Jr. ("Stanley") and Tim Clark ("Clark") (together, "Plaintiffs"). Plaintiffs initiated this lawsuit alleging that the Election Board's enforcement of the Indiana Republican Party's decision—that Plaintiffs are not Republicans in good standing for a period of five years and thus may not appear on the Republican primary ballot—violates Plaintiffs' constitutional rights (Filing No. 1). For the reasons discussed below, the Election Board's Motion to Dismiss is **granted,** Plaintiffs' Motion for Preliminary Injunction is **denied**, and their Motion for Summary Judgment is **denied as moot**.

I.   **BACKGROUND**

On December 20, 2024, Stanley, as counsel for Clark, filed a complaint with the Indiana Republican Party asserting that the chairman of the local Republican Party violated "GOP Rule 1-25" (Filing No. 22-1 at 1). In the complaint, Clark requested that the Indiana Republican Party

remove the local Republican Chairman from his office and ban him from running for elected office for five years as a Republican. *Id.* On January 23, 2024, the District 9 Officers of the Indiana Republican Party held a hearing on Clark's complaint. *Id.* At the end of the hearing, the District 9 Officers issued a written decision dismissing Clark's complaint against the local Republican chairman and determining that both Stanley and Clark are not Republicans in good standing for a period of five years. *Id.* Specifically, the written decision stated that Clark is not a Republican in good standing "because of his long and well-documented history of opposition to Republican candidates, financial support for candidates opposing Republican nominees, and frequent public self-declarations of being an independent." ([Filing No. 1-7 at 2](#)). The decision found that Stanley is not a Republican in good standing "because of his contribution to independent candidate Greg Taggart." *Id.*

On February 5, 2025, Stanley and Clark filed an appeal with the Indiana Republican Party ([Filing No. 22-1 at 2](#)). On May 14, 2025, the Indiana Republican Party issued a written decision upholding the District 9 Officers' decision in its entirety. *Id.* On July 2, 2025, Stanley sent a copy of a draft civil complaint to the Election Board and requested it issue a written statement refusing to enforce the decision of the Indiana Republican Party. That same day, the chairman of the Election Board responded but declined to state whether the Election Board intends to enforce the Indiana Republican Party's decision against Stanley and Clark. *Id.* On July 16, 2025, Stanley sent a follow-up letter to the Election Board concerning a potential lawsuit. *Id.* at 3. The Election Board did not respond. *Id.*

Because he is "concerned about dysfunction in his local government and corruption in the local Republican party," Stanley recently confirmed that he intends to run for elected office in Brown County as a Republican and announced in a public forum his plans to run for the elected

2

office of County Commissioner in Brown County Indiana in the 2026 election cycle (Filing No. 22-1 at 2). The deadline to file a declaration of candidacy for major political party primary nomination is February 6, 2026.

Plaintiffs initiated this lawsuit on July 25, 2025 (Filing No. 1) and filed their Amended Complaint on November 12, 2025 (Filing No. 22-1). That same day, Plaintiffs filed the instant Motion for Summary Judgment (Filing No. 25). On December 12, 2025, the Election Board moved to dismiss the Amended Complaint (Filing No. 27). Shortly thereafter, Plaintiffs filed their Motion for a Preliminary Injunction (Filing No. 29). On January 15, 2026, Plaintiffs filed a motion to submit additional legal authority (Filing No. 35), which the Court granted (Filing No. 37). This case is now ripe for ruling on the various motions.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*,

3

550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted).

The question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Northern Trust,* 69 F.3d at 129. To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### B.  **Preliminary Injunction Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). To obtain a preliminary injunction, the party seeking relief must show:

> (1) it has some likelihood of success on the merits of its claim; (2) it has no adequate remedy at law; (3) without relief it will suffer irreparable harm. If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction. However, if the plaintiff passes that threshold, the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest.

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citations and quotation marks omitted). "The court weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015).

C. **Summary Judgment Standard**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation modified).

Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

Here, Defendant failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion

5

for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

### III.   DISCUSSION

Plaintiffs assert that the Indiana Republican Party's decision—finding them not in good standing for a period of five years—violates federal constitutional principles of due process, equal protection, and freedom of speech. As a result of this situation, Plaintiffs argue, "the Brown County Election Board is . . . at risk of violating the U.S. Constitution if it enforces the private decision of the Indiana Republican Party." (Filing No. 26 at 1). Plaintiffs contend the Election Board cannot enforce the Indiana Republican Party's decision preventing them from running for office as Republicans without enmeshing itself in multiple violations of the Constitution. *Id.*

The Election Board argues the Amended Complaint should be dismissed because "[a]bsent from Plaintiffs' Complaint are any allegations of actions taken, policies made, decisions upheld or denial of candidate filings that involve the Plaintiffs or Brown County." (Filing No. 27-1 at 1). And because the Election Board "has taken zero action against or involving Plaintiffs['] desire to run for elected office," Plaintiffs have no standing to bring their claims and this controversy is not ripe for judicial review. *Id*.

The Court will address the Election Board's Motion to Dismiss first, because it is dispositive.

**A.   Motion to Dismiss**

The Amended Complaint seeks declaratory relief and a permanent injunction enjoining the Election Board from enforcing the Indiana Republican Party's determination that Plaintiffs are not Republicans in good standing (Filing No. 22-1 at 4). A party seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In addition, a permanent injunction requires success on the merits, not just a likelihood of success. *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012).

The Election Board argues that Plaintiffs have requested relief against the Election Board before any action has been taken (Filing No. 27-1 at 1). It asserts that not only has no action been taken, but Plaintiffs purported constitutional violations were allegedly committed by the Indiana Republican Party, which is not a party to this lawsuit. The Election Board adds that Plaintiffs are not asking the Court to declare whether the decision of the Indiana Republican Party is valid; rather they ask the Court, ad hoc, to unconditionally and permanently bar a local unit of government from following the law for the foreseeable future. *Id.* at 2. The Election Board argues that Plaintiffs have failed to meet even the bare minimum requirement for pleadings under Federal Rule of Civil Procedure (8)(a) because no relief can be given when no harm by the Election Board has been done. *Id.* at 3.

In their Response, Plaintiffs cite *Hero v. Lake County Election Board*, 42 F.4th 768 (7th Cir. 2022), arguing that it is squarely on point and that this Court has jurisdiction over this case (Filing No. 28 at 1–2). In *Hero*, the Seventh Circuit Court of Appeals determined that the district court did have jurisdiction to hear Hero's similar claims against the Lake County Election Board. *Hero*, 42 F.4th at 771–75. Plaintiffs acknowledge that Hero lost on the merits of his case, but they argue that it nonetheless undercuts the Election Board's Motion.

7

Plaintiffs explain that they have not sued the Indiana Republican Party because it is a private organization. They assert that the Election Board, as a government body, is bound by the U.S. Constitution and thus cannot enforce the Indiana Republican Party's decision against them. Plaintiffs argue to do so would convert what is otherwise an internal private decision into an unlawful governmental restriction on their constitutional rights. *Id.*

In response to the Election Board's contention that no actions have been taken, Plaintiffs argue that the Election Board did act because Plaintiffs' letter to the Election Board explained that a nonresponse would be interpreted as an intention to enforce the decision. *Id.* at 4. Plaintiffs then cite other Seventh Circuit precedent—*Wisconsin Right to Life State Political Action Committee v. Barland*, 664 F.3d 139 (7th Cir. 2011)—for the proposition that they satisfy Rule 8(a)(2). The court in *Barland* explained that "[r]ipeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all. Whether a claim is ripe for adjudication depends on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 148.

This Court agrees that it must first determine whether Plaintiffs have standing and whether the case is ripe. The Court will address each issue in turn before turning to the merits of the Election Board's Rule 12(b)(6) motion.

1. **Standing**

Article III of the Constitution limits judicial power to "Cases" and "Controversies," U.S. Const. art. III, § 2, "a limitation that confines federal courts 'to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law.'" *Barland*, 664 F.3d at 139 (quoting *Summers v. Earth*

*Island Inst.*, 555 U.S. 488, 492 (2009)). "The doctrine of standing enforces this constitutional limitation." *Id.*

"To satisfy standing, a party must demonstrate an injury in fact that is traceable to the defendant and is redressable by a court ruling." *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R.*, 13 F.4th 560, 568 (7th Cir. 2021) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "An injury in fact must be concrete and particularized as well as actual or imminent." *Id.* "'[T]raditional tangible harms, such as physical harms and monetary harms' will 'readily qualify as concrete injuries.'" *Id.* (quoting *Ramirez*, 594 U.S. at 425). "But if a concrete injury has not already occurred, a plaintiff cannot establish standing by alleging merely a *possible* future injury—rather, the injury must be '*certainly impending*.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphases in original). The plaintiff bears the burden of demonstrating a concrete or imminent injury. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007–08 (7th Cir. 2021).

Plaintiffs submitted supplemental authority, citing the United States Supreme Court decision in *Bost v. Illinois State Board of Elections*, 607 U.S. ---, 2026 U.S. LEXIS 431 (2026). In *Bost*, the Supreme Court held that a political candidate had standing to challenge the rules that govern the counting of votes in his election. *Id.* at *5. The Supreme Court then held that,

> Under Article III of the Constitution, plaintiffs must have a personal stake in a case to have standing to sue. They must, in other words, be able to answer a basic question What's it to you? Congressman Bost has an obvious answer: He is a candidate for office. And a candidate has a personal stake in the rules that govern the counting of votes in his election.

*Id.* at *7–8 (internal quotation marks and citations omitted). The Supreme Court went on to say, "[c]andidates, in short, are not 'mere bystanders' in their own elections. They have an obvious

9

personal stake in how the result is determined and regarded. Departures from the preordained rules cause them particularized and concrete harm." *Id.* at *11 (internal citation omitted).

This authority is persuasive, and the Court agrees that Plaintiffs have standing. As Plaintiffs argue, if a political candidate has standing to challenge the rules for counting votes well before any actual voting has occurred, then political candidates such as Plaintiffs, who have announced their candidacy, may challenge decisions excluding them from access to a ballot.

In addition to the holding in *Bost*, Plaintiffs have demonstrated imminent harm and thus have standing. Plaintiffs will be denied access to the Republican ballot, and such harm is certainly impending, as the deadline for political candidates to file their declarations of candidacy for major political party primary nominations—February 6, 2026—is approaching.

### 2. Ripeness

The ripeness doctrine "is based on the Constitution's case-or-controversy requirements as well as discretionary prudential considerations." *Barland*, 664 F.3d at 148. "Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all." *Id.* "Whether a claim is ripe for adjudication depends on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (citation modified). Claims presenting purely legal issues are normally fit for judicial decision. *Id.* (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). "And in challenges to laws that chill protected speech, the hardship of postponing judicial review weighs heavily in favor of hearing the case." *Id.*

As with standing, the Court finds that this case is ripe for judicial review. This case does not involve uncertain or contingent events that may not occur as anticipated or at all. Rather, the sole issue is whether Plaintiffs' constitutional rights will be violated by the impending decision by

the Election Board to uphold the Indiana Republican Party's decision. Though it is true, as the Election Board argues, it has not yet stated whether it will enforce the Indiana Republican Party's decision, the writing is on the wall. Were it planning to repudiate the Indiana Republican Party's decision, this lawsuit would not have been filed. Accordingly, this case is ripe for judicial review.

### 3. Merits of the Election Board's Rule 12(b)(6) Motion

Although Plaintiffs have standing and this case is ripe for review, that does not end the analysis. While it is true that a motion to dismiss may be granted on the grounds that a plaintiff does not have standing or the case is not ripe, the proper vehicle for doing so is a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *see Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (standing); *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008) (ripeness). Here, the Election Board moves for dismissal under Rule 12(b)(6)—rather than Rule 12(b)(1)—on the grounds that even if all of Plaintiffs' allegations are true, they fail to state a claim for relief. The Court agrees with the Election Board that even if all of Plaintiffs' allegations are true, their claims fail.

Plaintiffs' Amended Complaint asserts violations of their First and Fourteenth Amendment rights (Filing No. 22-1 at 3). Plaintiffs contend, albeit in their summary judgment motion, that the Election Board's enforcement of the Indiana Republican Party's decision will violate their due process rights because GOP Rule 1-25 is being used by the Indiana Republican Party as a discriminatory tool to protect party leadership, and the State of Indiana cannot participate in a discriminatory scheme via the Election Board (Filing No. 26 at 21). Plaintiffs also assert that the enforcement by the Election Board will deprive them of their equal protection rights because the Indiana Republican Party's decision to "convict" Plaintiffs was made in a "selective and vindictive" way. *Id.* at 25. Lastly, Plaintiffs argue that their freedom of speech rights will be violated because

11

the Indiana Republican Party only made its decision because Plaintiffs wrote a letter requesting the party ban the Republican chairman from running for office for five years. *Id.* at 28.

"The First and Fourteenth Amendments safeguard the rights of citizens and political parties to participate in the electoral system." *Hero*, 42 F.4th at 775 (citing *Norman v. Reed*, 502 U.S. 279, 288 (1992)). The Seventh Circuit has stated that "the *Anderson*/*Burdick* test applies to *all* First and Fourteenth Amendment challenges to state election laws." *Id.* (citation modified) (emphasis in original). The *Anderson-Burdick* framework derives from two Supreme Court cases, *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). *See Hero*, 42 F.4th at 775. In *Anderson*, the United States Supreme Court held that Ohio's early filing deadline, which required candidates to declare their candidacy in March ahead of a November election, was unlawful. 460 U.S. at 786–87. However, in *Burdick*, the United States Supreme Court upheld a Hawaii law prohibiting write-in voting. 504 U.S. at 432–33. Hawaii had an interest in avoiding unrestrained factionalism, and the Supreme Court found that the law imposed a low burden. *Id.* at 433–40.

> The resulting test requires courts to engage in a two-part inquiry:
>
> First, [the court] determine[s] whether the law imposes severe or reasonable and nondiscriminatory restrictions on candidates' and voters' constitutional rights so that [the court] can ensure application of the appropriate level of scrutiny. Second [the court] must determine whether the state interest offered in support of the law is sufficiently weighty under the appropriate level of scrutiny.

*Hero*, 42 F.4th at 775–76 (citation modified). "Severe restrictions on voter rights trigger strict scrutiny, whereas courts generally defer to the state's interest for less restrictive ones, those that impose reasonable, nondiscriminatory restrictions." *Id.* at 776 (citation modified).

As mentioned earlier by Plaintiffs, their case is akin to *Hero v. Lake County Election Board*, 42 F.4th 768 (7th Cir. 2022). In *Hero*, the town council decided to exercise its eminent domain

12

authority to seize property of low-income residents. *Id.* at 770. The plaintiff, Hero, opposed the measure and backed independent candidates to replace two incumbent Republican councilmembers. *Id.* The Indiana Republican Party banned Hero from the Republican party for ten years after learning of his actions. *Id.* When Hero attempted to appear as a Republican on the Lake County election ballot, the Lake County Election Board sided with the Indiana Republican Party and struck Hero's name from the ballot. *Id.* Hero then sued the Lake County Election Board seeking declaratory relief and an injunction arguing that his First and Fourteenth Amendments rights were violated—the same arguments Plaintiffs raise before this Court. *Id.*

In *Hero*, the Seventh Circuit determined that the Lake County Election Board did not violate Hero's First and Fourteenth Amendment rights. *Id.* at 776. The court explained that striking Hero's name from the ballot merely imposed a minor restriction on his ballot access because Indiana law provides alternative measures such as running as an independent. *Id.* As an independent, Hero could tout his Republican virtues, tell voters he supports Republicans, and run on a platform identical to any political party. *Id.* The only limitation was that Hero could not appear on the Republican Party's primary ballot. *Id.*

The Seventh Circuit concluded that the restriction was reasonable and nondiscriminatory because the State of Indiana had an interest in protecting a party's right to determine its own membership and limit its candidates to those party members. *Id.* at 776–77 (citing *Ray v. Blair*, 343 U.S. 214 (1952) (party loyalty oath); *Kucinich v. Tex. Democratic Party*, 563 F.3d 161 (5th Cir. 2009) (party loyalty oath); *De La Fuente v. Cortes*, 751 F. App'x 269 (3d Cir. 2018) (sore-loser law); (*S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752 (4th Cir. 2010) (sore-loser law)). The Seventh Circuit added that "[p]olitical parties enjoy these associational rights like any other organization. And '[i]n no area is the political association's right to exclude more important

than in the process of selecting its nominee.'" *Id.* at 777 (second alteration in original) (quoting *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000)).

Here, the Election Board did not violate Plaintiffs' First and Fourteenth Amendment rights. As in *Hero*, Plaintiffs have alternative means of accessing the general election ballot and may run as independents. And Plaintiffs may tout any views they wish, including their support for Republicans. They merely cannot appear on the Republican Party's primary ballot.

The Court also finds the restriction in this case to be reasonable and nondiscriminatory. First, the state has an interest in protecting a party's right to determine its membership and candidates. *Id.* "Implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* (citation modified). "The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000). Thus, the Indiana Republican Party has the right to exclude Plaintiffs from appearing on the Republican primary ballot.

Second, while Plaintiffs use the word "discriminatory," nothing they argue points to a discriminatory scheme on part of the Indiana Republican Party. Plaintiffs claim that they were discriminated against because GOP Rule 1-25 is being used as a tool to protect party leadership rather than to exclude individuals who disagree with party viewpoints (Filing No. 26 at 21). However, the Indiana Republican Party found that Clark is not a Republican in good standing "because of his long and well-documented history of opposition to Republican candidates, financial support for candidates opposing Republican nominees, and frequent public self-declarations of being an independent." (Filing No. 1-7 at 2). The Indiana Republican Party then

found Stanley to not be a Republican in good standing "because of his contribution to independent candidate Greg Taggart." *Id.* As such, *Hero* controls as "political parties may accordingly protect themselves from intrusion by those with adverse political principles." 42 F.4th at 777 (citation modified). "[S]o too can a state protect the First Amendment rights of a political party, as the Election Board did here by allowing the Republican Party to determine its own membership and restrict its standard bearers to members in good standing." *Id.* And like Hero, Plaintiffs can still access the general election ballot and may run as independents.

The Court finds that even taking Plaintiffs' assertions as true, their claims fail under Rule 12(b)(6), and their request for a permanent injunction fails, as they have no likelihood of success on the merits of their claims. *See ADT Sec. Servs., Inc.*, 672 F.3d at 498. Accordingly, the Election Board's Motion to Dismiss is **granted**.

B.  **Motion for Preliminary Injunction**

"Out of an abundance of caution," Plaintiffs filed a Motion for Preliminary Injunction because the deadline for political candidates to file declarations of candidacy for major political party primary nominations is February 6, 2026 ([Filing No. 29 at 1](Filing No. 29 at 1)). Plaintiffs submit that "they are entitled to a preliminary injunction prior to February 6, 2026 preventing the Brown County Election Board from removing Mr. Stanley from the 2026 Republican primary ballot." *Id.* at 4.

Having granted the Election Board's Motion to Dismiss above, Plaintiffs have no likelihood of success on the merits, so their Motion for Preliminary Injunction fails at step one. Accordingly, Plaintiffs' Motion for Preliminary Injunction is **denied**.

C.  **Motion for Summary Judgment**

Because the Court granted the Election Board's Motion to Dismiss, Plaintiffs' Motion for Summary Judgment is **denied as moot**. *See Vasquez v. Gertler & Gertler, Ltd.*, 987 F. Supp. 652,

659 (N.D. Ill. 1997); *see also Bradley Mem'l Hosp. v. Leavitt*, 599 F. Supp. 2d 6, 18 (D.D.C. 2009) (finding motion for summary judgment moot because court granted defendant's motion to dismiss).

## IV.    CONCLUSION

For the reasons discussed above, the Election Board's Motion to Dismiss (Filing No. 27) is **GRANTED.** Plaintiffs' Motion for Preliminary Injunction (Filing No. 29) is **DENIED**, and Plaintiffs' Motion for Summary Judgment (Filing No. 25) is **DENIED AS MOOT**.

This lawsuit is **dismissed with prejudice**.

Final Judgment shall issue separately.

**SO ORDERED**.

Date:   1/27/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Samantha Elaine DeWester
DeWester Law, LLC
sdewester@gmail.com

Richard Stanley, Jr
stanleyiplaw@yahoo.com